IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MICHAEL JAMES WRIGHT,    )   No. C 08-2228 SBA (PR)
          )
      Petitioner,   )   **<u>ORDER DENYING PETITION FOR</u>**
          )   **<u>WRIT OF HABEAS CORPUS</u>**
  v.         )
          )
A. HEDGPETH, Warden,    )
          )
      Respondent.   )
_____)

**INTRODUCTION**

This matter is now before the Court for consideration of Petitioner's <u>pro se</u> petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging a conviction he received in Alameda County Superior Court.  Respondent A. Hedgpeth, Warden of Pleasant Valley State Prison, opposes the petition.  Petitioner has filed a traverse.  For the reasons discussed below, the petition is DENIED as to all claims.

**BACKGROUND**

**I.**    **<u>Case History</u>**

On April 5, 2005, a jury convicted Petitioner of first-degree murder (Cal. Pen. Code § 187(a)), attempted murder (Cal. Pen. Code §§ 187(a), 664), assault with a firearm (Cal. Pen. Code § 245(a)(2)), and possession of cocaine for sale (Cal. Health & Safety Code § 11351).  The jury also found true allegations that Petitioner was armed with a firearm (Cal. Pen. Code § 12022(a)(1)), and Petitioner admitted to having served a prior prison term (Cal. Pen. Code § 667.5(b)).  On July 22, 2005, the trial court sentenced Petitioner to a term of thirty-eight years to life in state prison.  (Resp't Ex. 1 at 427.)

The California Court of Appeal affirmed the judgment in an unpublished opinion dated December 12, 2006, and the California Supreme Court denied a petition for review on February 14, 2007.  (Resp't Exs. 7, 9.)  Petitioner filed a petition for a writ of habeas corpus in the California

1    Court of Appeal on April 1, 2008, and it was denied two days later.  (Resp't Exs. 10, 11.)  Petitioner

2    filed a petition for a writ of habeas corpus in the California Supreme Court, which was denied on

3    September 24, 2008.  (Resp't Exs. 12, 13.)

4           Petitioner filed the instant petition on April 29, 2008, and on the same day filed a motion to

5    stay the petition in order to exhaust his state court remedies as to his unexhausted claims.  The

6    motion for a stay was granted.  On March 19, 2009, he filed an amended petition setting forth five

7    claims: (1) that the prosecutor violated his rights to equal protection by striking two potential jurors

8    based on their race; (2) that the jury instruction on "lying in wait" was in error; (3) that the trial court

9    violated his right to due process and to present a defense by refusing to instruct the jury on second-

10   degree murder; (4) that he received ineffective assistance of trial counsel; and (5) that he received

11   ineffective assistance of appellate counsel.  On August 7, 2009, the stay was lifted, and Respondent

12   was ordered to show cause.  Respondent filed an answer and memorandum of points and authorities

13   on December 23, 2009, and lodged a number of exhibits.  Petitioner filed a traverse on February 3,

14   2010.

15   **II.    Statement of Facts**

16          The following facts are taken from the opinion of the California Court of Appeal:

17
18   In November 2002 Victor Barbosa, a cocaine distributor, was shot and killed during a
     cocaine purchase gone awry. The event started when "middleman" Macario Toscano
19   arranged for Barbosa to meet defendant and Toscano at the Toscano residence where
     Barbosa was to deliver a kilogram of cocaine. It was the prosecution's theory that
20   defendant had arranged the transaction, not intending to purchase the drugs but to
     steal them. After money had been exchanged and while the cocaine was being tested
21   for potency, defendant had a brief telephone conversation. Shortly afterwards, one of
     defendant's accomplices, who had been hiding outside the residence in defendant's
22   van, broke into the home by kicking in the front door. He opened fire towards the
     area of the home where Barbosa was located. Barbosa's dead body was later found
23   face down on the floor of Toscano's kitchen, having received multiple bullet wounds.
     Defendant and his accomplices fled but defendant was later apprehended.

24   The jury was instructed on several theories of murder, including murder by means of
25   lying in wait using CALJIC No. 8.25 and, as to the defendant, accomplice liability
     and aiding and abetting. The jury found defendant guilty on all counts and defendant
26   was sentenced to 38 years to life imprisonment. Defendant filed a timely notice of
     appeal.

27   People v. Wright, No. A111006, slip op. at 2 (Cal. Ct. App. Dec. 12, 2006) (Resp't Ex. 7).

28

**DISCUSSION**

**I.     Legal Standard**

      **A.     Standard of Review for State Court Decisions**

      Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a district court may grant a petition challenging a state conviction or sentence on the basis of a claim that was "adjudicated on the merits" in state court only if the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  A state court has "adjudicated" a petitioner's constitutional claim "on the merits" for purposes of § 2254(d) when it has decided the petitioner's right to post-conviction relief on the basis of the substance of the constitutional claim advanced, rather than denying the claim on the basis of a procedural or other rule precluding state court review on the merits.  Lambert v. Blodgett, 393 F.3d 943, 969 (9th Cir. 2004).  It is error for a federal court to review de novo a claim that was adjudicated on the merits in state court.  See Price v. Vincent, 538 U.S. 634, 638-43 (2003).

      **1.     Section 2254(d)(1)**

      Challenges to purely legal questions resolved by a state court are reviewed under § 2254(d)(1), under which a state prisoner may obtain habeas relief with respect to a claim adjudicated on the merits in state court only if the state court adjudication resulted in a decision that was "contrary to" or "involved an unreasonable application of  clearly established Federal law, as determined by the Supreme Court of the United States."  Williams (Terry) v. Taylor, 529 U.S. 362, 402-04, 409 (2000).  While the "contrary to" and "unreasonable application" clauses have independent meaning, see id. at 404-05, they often overlap, which may necessitate examining a petitioner's allegations against both standards, see Van Tran v. Lindsey, 212 F.3d 1143, 1149-50 (9th Cir. 2000), overruled on other grounds, Lockyer v. Andrade, 538 U.S. 63, 70-73 (2003).

1

### a.   Clearly Established Federal Law

"Clearly established federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412. "Section 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." Id. "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme] Court is, at best, ambiguous." Mitchell v. Esparza, 540 U.S. 12, 17 (2003).  If there is no Supreme Court precedent that controls on the legal issue raised by a petitioner in state court, the state court's decision cannot be contrary to, or an unreasonable application of, clearly-established federal law.  See, e.g., Stevenson v. Lewis, 384 F.3d 1069, 1071 (9th Cir. 2004).

The fact that Supreme Court law sets forth a fact-intensive inquiry to determine whether constitutional rights were violated "obviates neither the clarity of the rule nor the extent to which the rule must be seen as 'established'" by the Supreme Court.  Williams, 529 U.S. at 391.  There are, however, areas in which the Supreme Court has not established a clear or consistent path for courts to follow in determining whether a particular event violates a constitutional right; in such an area, it may be that only the general principle can be regarded as "clearly established."  Andrade, 538 U.S. at 64-65.  When only the general principle is clearly established, it is the only law amenable to the "contrary to" or "unreasonable application of" framework.  See id. at 73.

Circuit decisions may still be relevant as persuasive authority to determine whether a particular state court holding is an "unreasonable application" of Supreme Court precedent or to assess what law is "clearly established."  Clark v. Murphy, 331 F.3d 1062, 1070-71 (9th Cir.), cert. denied, 540 U.S. 968 (2003); Duhaime v. Ducharme, 200 F.3d 597, 600 (9th Cir. 1999).

### b.   "Contrary to"

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  Williams, 529 U.S. at 413.  A "run-of-the-mill state-court decision" that correctly identifies the controlling Supreme Court framework and applies it to the facts of a

4

prisoner's case "would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." <u>Williams</u>, 529 U.S. at 406.  Such a case should be analyzed under the "unreasonable application" prong of § 2254(d).  <u>See</u> <u>Weighall v. Middle</u>, 215 F.3d 1058, 1062 (9th Cir. 2000).

### c.   **"Unreasonable Application"**

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Williams</u>, 529 U.S. at 412-13. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." <u>Id.</u> at 411; <u>accord</u> <u>Middleton v. McNeil</u>, 541 U.S. 433, 436 (2004) (per curiam) (challenge to state court's application of governing federal law must be not only erroneous, but objectively unreasonable); <u>Woodford v. Visciotti</u>, 537 U.S. 19, 25 (2002) (per curiam) ("unreasonable" application of law is not equivalent to "incorrect" application of law).

Evaluating whether a rule application was unreasonable requires considering the relevant rule's specificity; if a legal rule is specific, the range of reasonable judgment may be narrow; if it is more general, the state courts have more leeway.  <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664 (2004).  Whether the state court's decision was unreasonable must be assessed in light of the record that court had before it.  <u>Holland v. Jackson</u>, 542 U.S. 649, 651 (2004) (per curiam).

The objectively unreasonable standard is not a clear error standard.  <u>Andrade</u>, 538 U.S. at 75-76 (rejecting <u>Van Tran</u>'s use of "clear error" standard); <u>Clark</u>, 331 F.3d at 1067-69 (acknowledging the overruling of <u>Van Tran</u> on this point).  After <u>Andrade</u>,

> [t]he writ may not issue simply because, in our determination, a state court's application of federal law was erroneous, clearly or otherwise.  While the "objectively unreasonable" standard is not self-explanatory, at a minimum it denotes a greater degree of deference to the state courts than [the Ninth Circuit] ha[s] previously afforded them.

<u>Id.</u>  In examining whether the state court decision was unreasonable, the inquiry may require analysis of the state court's method as well as its result.  <u>Nunes v. Mueller</u>, 350 F.3d 1045, 1054 (9th Cir. 2003).

2.      **Sections 2254(d)(2), 2254(e)(1)**

A federal habeas court may grant a writ if it concludes a state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  An unreasonable determination of the facts occurs where a state court fails to consider and weigh highly probative, relevant evidence, central to a petitioner's claim, that was properly presented and made part of the state court record.   Taylor v. Maddox, 366 F.3d 992, 1005 (9th Cir. 2004).  A district court must presume correct any determination of a factual issue made by a state court unless a petitioner rebuts the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

Section 2254(d)(2) applies to an intrinsic review of a state court's fact-finding process, or situations in which the petitioner challenges a state court's fact-findings based entirely on the state court record, whereas § 2254(e)(1) applies to challenges based on extrinsic evidence, or evidence presented for the first time in federal court.  See Taylor v. Maddox, 366 F.3d 992, 999-1000 (9th Cir. 2004).  In Taylor, the Ninth Circuit established a two-part analysis under §§ 2254(d)(2) and 2254(e)(1).  Id.  First, federal courts must undertake an "intrinsic review" of a state court's fact-finding process under the "unreasonable determination" clause of § 2254(d)(2).  Id. at 1000.  The intrinsic review requires federal courts to examine the state court's fact-finding process, not its findings.  Id.  Once a state court's fact-finding process survives this intrinsic review, the second part of the analysis begins by dressing the state court finding in a presumption of correctness under § 2254(e)(1).  Id.  According to the AEDPA, this presumption means that the state court's fact-finding may be overturned based on new evidence presented by a petitioner for the first time in federal court only if such new evidence amounts to clear and convincing proof a state court finding is in error.  See 28 U.S.C. § 2254(e)(1).  "Significantly, the presumption of correctness and the clear-and-convincing standard of proof only come into play once the state court's fact-findings survive any intrinsic challenge; they do not apply to a challenge that is governed by the deference implicit in the 'unreasonable determination' standard of section 2254(d)(2)."  Taylor, 366 F.2d at 1000.

When there is no reasoned opinion from the highest state court to consider the Petitioner's

claims, the Court looks to the last reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991). Here, the California Court of Appeal was the highest state court to issue an explained opinion on Petitioner's first two claims. There is no explained state court opinion on Petitioner's remaining three claims, which were raised in his state habeas petitions that were summarily denied

## II.    Exhaustion

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through state collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court. See 28 U.S.C. § 2254(b),(c); Granberry v. Greer, 481 U.S. 129, 133-34 (1987). The parties do not dispute that Petitioner has exhausted his claims.

## III.    Legal Claims

Petitioner claims: (1) that the prosecutor violated his rights to equal protection by striking two potential jurors based on their race; (2) that the jury instruction on "lying in wait" was in error; (3) that the trial court violated his right to due process and to present a defense by refusing to instruct the jury on second-degree murder; (4) that he received ineffective assistance of trial counsel; and (5) that he received ineffective assistance of appellate counsel.

### 1.    Jury Selection

Petitioner claims that the prosecutor used peremptory challenges to strike African-American prospective jurors based on their race, in violation of the Equal Protection Clause. The California Court of Appeal summarized the relevant trial court proceedings as follows:

> The 12 prospective jurors in the box when peremptory challenges began included nine women and three men. Of the 12, only Ms. C and Ms. G were African-American. The prosecutor used his first peremptory challenge on Ms. G. After the defense passed, the prosecutor exercised a second peremptory challenge on prospective juror Ms. E. The defense passed again, and the prosecutor excused Ms. C. Defendant then made a motion under People v. Wheeler (1978) 22 Cal.3d 258 (Wheeler) and Batson v. Kentucky (1986) 479 U.S. 79 (Batson).
>
> After the jurors were excused for the day, the court heard defendant's Batson/Wheeler motion. Defense counsel noted that all three of the prosecutor's challenges had been to women, and that all three were over the age of 40. Defense counsel pointed out that prospective Jurors G and C were both African-American, and were the only two African-Americans that had been in the jury box. Defendant argued that both prospective jurors were steadily employed and that they were excused because of

their race.

The court noted that voir dire examination had disclosed that Ms. C's brother had been "convicted of the very offense that we're dealing with here," and that Ms. G currently had a family member facing similar charges in Alameda County. The court could not recall anything in particular about Ms. E, but observed that a number of women, "some of whom appear to be [age] 40 or more," remained on the jury. The court ruled that defendant had not made a prima facie case, but nonetheless asked the prosecutor if he wished to add anything.

The prosecutor stated that prospective juror G's grandson was in custody apparently facing murder charges and that the prosecutor for the case worked for the same office as he did. The prosecutor also stated that Ms. G was wearing dark sunglasses, preventing him from making eye contact with her. The prosecutor said his main concern with respect to Ms. C was that her brother had been charged and convicted of murder by his office. He added that Ms. C stated she did not know if her brother had been fairly treated and thought he may have gone to prison for a murder he did not commit.

(Resp't Ex. 7 at 2-3.)

The Equal Protection Clause forbids the challenging of potential jurors solely on account of their race. Batson v. Kentucky, 476 U.S. 79, 89 (1986). A party may raise an equal protection claim on behalf of a juror excluded because of the juror's race, regardless of whether the party and the excluded juror share the same race. Powers v. Ohio, 499 U.S. 400, 406 (1991). A violation of equal protection under Batson is established in a three-step process: (1) the defendant must make out a prima facie case that the prosecutor exercised peremptory challenges on the basis of race "by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose;" (2) if the prima facie case is made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question; and (3) if the prosecutor carries the burden of showing a race-neutral explanation, the defendant has the burden to prove purposeful discrimination. Batson, 476 U.S. at 93-94, 97-98.

Petitioner claims that the trial court erred at the first Batson step, in finding that he had not made a prima facie case of discrimination. A party establishes a prima facie equal protection violation based on race by showing that: (1) the defendant is a member of a cognizable racial group, (2) the group's members have been excluded from the jury, and (3) the circumstances of the case raise an inference that the exclusion was based on race. Batson, 476 U.S. at 96. Here, the first and second elements of the Batson prima facie case of discrimination are met because the two prospective jurors are African-American and the prosecutor used peremptory strikes to remove them.

8

See id.

The remaining issue is whether the third element of a prima facie case of discrimination is met; namely, whether the circumstances of the case raise an inference that the challenges were based on race. Id. In Batson, the Supreme Court held that in "deciding whether the defendant has made the requisite showing, the trial court should consider all relevant circumstances," and noted that a "prosecutor's questions and statements during voir dire examination and in exercising his challenges may support or refute an inference of discriminatory purpose." Williams v. Runnels, 432 F.3d 1102, 1107 (9th Cir. 2006) (quoting Batson, 476 U.S. at 96-97). The Supreme Court reiterated in Johnson v. California, 545 U.S. 162, 170 (2005), that "a defendant may rely on 'any other relevant circumstances' to raise an inference of discriminatory purpose." Id. (quoting Johnson, 545 U.S. at 170).

Petitioner argues that the trial court's finding of no prima facie case of discrimination was incorrect because at the time of trial the California Supreme Court, in People v. Johnson, 30 Cal. 4th 1302 (2003), required defendants to establish a prima facie case of discrimination under the "more likely than not" standard, a more stringent standard that Batson, which requires a showing of evidence sufficient for an inference of discriminatory purpose. See Johnson, 545 U.S. at 171-72 ("California's 'more likely than not' standard is at odds with the prima facie inquiry mandated by Batson."). However, the California Court of Appeal, the state court decision which this Court is reviewing, found that the trial court was not clear as to which standard it applied, and that the Petitioner had not established a prima facie case of racial discrimination by the prosecutor even under the less stringent standard mandated by Batson. (Resp't Ex. 7 at 4-5.)

The California Court of Appeal explained its reasoning for finding no evidence to support an inference of discriminatory purpose as follows:

> The record as a whole fails to support a reasonable inference that the prosecutor's peremptory challenges reflected the discriminatory purpose of eliminating African-Americans from the jury. The only basis for drawing such an inference in this regard stated in the trial court was that the prosecutor challenged one prospective juror who was African-American (Ms. C) after he had previously dismissed another African-American (Ms. G). However, the sole fact that challenges were used to excuse prospective jurors of a particular race is not necessarily sufficient to state a prima facie case. Although decided before the United States Supreme Court decision in Johnson v. California, supra, 542 U.S. 162 decisions of the California Supreme Court holding that "the removal of all members of a cognizable group, standing

9

alone, is [not] dispositive on the question of whether defendant has established a prima facie case of discrimination" remain instructive. (People v. Young (2005) 34 Cal.4th 1149, 1173, fn. 7; see also People v. Box (2000) 23 Cal.4th 1153, 1188-1189.)

While in some contexts the use of two peremptory strikes on African-American prospective jurors might provide an inference of purposeful discrimination, we must evaluate the "totality of the relevant circumstances" surrounding the use of the two strikes. (See Johnson v. California, supra, 545 U.S. at p. 168.) Initially, the record fails to reflect the number of prospective African-Americans remaining in the panel, or whether any of the jurors ultimately selected were African-American. More importantly, as the trial court noted, the voir dire examination had brought out compelling reasons for striking the two prospective jurors that were African-Americans. Ms. G stated that her grandson had been in jail for two or three months in connection with a murder investigation but had not been charged. According to Ms. G, the police had questioned her grandson and decided to keep him in custody because "he knows who the person is." She stated that every time her grandson goes to court the case is continued because the prosecutor, a member of the Alameda County District Attorneys office, is not ready. Similarly, Ms. C revealed that her brother had been convicted of murder. She believed someone may have lied to convict him, and was unable to answer whether she thought he was treated fairly. Under these circumstances, it is difficult to believe that any competent prosecutor would have permitted these two women to remain on the jury. Their peremptory removal, standing alone, hardly supports an inference that the challenges were made for an improper purpose.

Defendant states that the "chance probability of such an event"-two of three peremptory challenges being used to remove the only two African-Americans in the jury box of 12-"is only 3.8%."[1]  Defendant argues that "[s]uch chance probabilities are clearly sufficient to 'support an inference' of purposeful discrimination." But while a statistical disparity may in some circumstances be sufficient to establish a prima facie case of discrimination, here it fails to do so. A defendant asserting racial discrimination in jury selection has the burden of creating as complete a record as possible. (Wheeler, supra, 22 Cal.3d at p. 280.) Defendant does not support his arguments with citations to the record, and we have found nothing in the record to indicate the racial composition of the venire or, as indicated above, whether any African-Americans were ultimately selected as jurors. (Guthrie v. State of California (1998) 63 Cal.App.4th 1108, 1115 [appellate court may treat as waived any factual contentions not supported by a citation to the record].) Moreover, in the context of this record as a whole, in which there existed such obvious and persuasive reasons for challenging Ms. G and Ms. C, the significance of defendant's statistics is minimal.

(Resp't Ex. 7 at 5-6 (footnote in original).)

The California Court of Appeal reasonably found that the evidence did not support an inference of that the prosecutor exercised his peremptory challenges with a racially discriminatory purpose.  The removal of both African-American prospective jurors from the initial 12-person venire panel does not on its own support an inference of purposeful discrimination, particularly where the

---

[1]Defendant arrives at this figure as follows: "2/12 [the first challenge], times 11/12 [the second challenge], times 1/12 [the third challenge], times a factor of three [which must be used when only two of three challenges were against a particular group]."

surrounding circumstances strongly indicate otherwise.  See Fernandez v. Roe, 286 F.3d 1073, 1078-79 (9th Cir. 2002) (stating that prosecutor's strike of the only two African-American venire members would not alone ordinarily support inference of discrimination).  Here, the surrounding circumstances strongly indicate that there was no discriminatory purpose.  The two prospective jurors' answers during voir dire revealed that they both had close relative who had been prosecuted or were being prosecuted for the same crimes as Petitioner and by the same District Attorney's office as in Petitioner's trial.  Furthermore, there was evidence that both prospective jurors had negative feelings about the prosecution of their relatives.  Ms. G's grandson was in jail in connection with a murder investigation, and she testified that the prosecutor, who is from the same District Attorney's office as the prosecutor in Petitioner's case, continues to cause delays in the case because of a lack of preparation.  Ms. C's brother was convicted of murder, based on what she believed to be a lie, and she would not say whether or not she believed that he had been treated fairly.   Given the record of the two prospective jurors' negative experiences with the prosecutor's office in murder cases involving close relatives, the state appellate court could reasonably find that the evidence does not support an inference that the prosecutor wanted to remove them for a discriminatory purpose from a trial involving the same charges and the same prosecutor's office.

An inference of a discriminatory purpose showing a prima facie case of discrimination under Batson's first step may also be gleaned from a comparative juror analysis -- i.e., determining whether non-challenged jurors possess any of the characteristics on which the prosecution challenged jurors in the protected group.  Boyd v. Newland, 467 F.3d 1139, 1147-48 (9th Cir. 2006).[2]  Here, however, such an analysis does not support an inference of a discriminatory purpose. The other jurors, including those who were not African-American, were also asked whether they had a relative who had been convicted, and eleven of those who were seated had no relatives who had been convicted. (Resp't Ex. 3 at 256, 274, 347, 349, 367, 373, 401, 443, 448, 468, 476.)  The other juror (Juror Number 7) had two "much older" brothers who had drug convictions "years ago" when she was a "child," but she indicated that she did not know what had happened and that it did not

_____

[2]Contrary to the view of the California courts, comparative juror analysis should take place on appeal even when the trial court did not engage in such analysis.  Boyd, 467 F.3d at 1148-50.

cause her to favor either side.  (Id. at 265-66.)  Unlike the stricken prospective jurors, Juror Number

7's relatives were not prosecuted in connection with a murder and, more importantly, she did not

testify that she had any negative impressions or experiences with the prosecutor's office or the

criminal justice system.  Thus, a comparative juror analysis does not uncover any evidence that

would support an inference of a discriminatory purpose in the prosecutor's challenges to the two

prospective jurors.

Even if the record supported an inference of a discriminatory purpose so as to make out a

prima facie case of discrimination, Petitioner's claim would clearly fail at the second step of the

Batson analysis.  If a federal habeas court determines that the state trial court erred in not finding a

prima facie case, the habeas court should proceed to determine whether there was a Batson violation

in state court.  Fernandez, 286 F.3d at 1079-80.  As described by the California Court of Appeal,

the prosecutor provided several race-neutral reasons for striking the two prospective jurors:

> [T]he trial court gave the prosecutor an opportunity to explain his challenges and the
> prosecutor provided several nondiscriminatory reasons for the peremptory strikes.
> Where the burden has shifted, "[t]he prosecutor need only identify facially valid
> race-neutral reasons why the prospective jurors were excused. [Citations.] The
> explanation need not justify a challenge for cause." (People v. Gutierrez, supra, 28
> Cal.4th at p. 1122.) Here the prosecutor explained, "As to Ms. [G.] a factor in
> addition to the fact that her son is in custody at Santa Rita-or her grandson-excuse
> me-is in custody at Santa Rita, apparently facing charges of murder. She also had
> been to the court proceedings on his behalf, and it was her impression that each time
> he came to court, the case did not go forward because the D.A. was still putting the
> case together, of course being the same district attorney's office that I work for. [¶] ...
> [¶] As additional factor as to Ms. [C]-obviously my major concern was the fact that
> her brother had been prosecuted for murder, had been convicted of murder in
> Alameda County by my office. [¶] Her belief about that case was she didn't know if
> he was justly treated or not and may have gone to prison for a murder that he didn't
> commit. [¶] Given that that was her feeling about what the system had wrought
> concerning her own brother, that was a major concern of mine." By moving on
> without commenting on the validity of these justifications, the trial court implicitly
> accepted them as genuine, race-neutral reasons. Whether or not there was an adequate
> prima facie showing, it is clear that the prospective jurors were properly excluded.

(Resp't Ex. 7 at 7-8.)  At Batson's second step, the prosecutor's explanation need not be persuasive;

unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be

deemed race neutral.  See Purkett v. Elem, 514 U.S. 765, 768-69 (1995).  There is nothing inherently

discriminatory in the prosecutor's proffered reasons for striking the two prospective jurors.  Indeed,

the conviction or arrest of a relative for a similar crime as the defendant has been found to be a race-

neutral reason for striking a juror.  See United States v. Hendrix, 509 F.3d 3623, 370 (7th Cir. 2007).

12

1    Consequently, the state appellate court reasonably found that the prosecutor offered race-neutral

2    reasons for his challenges, and that Petitioner's claim failed at <u>Batson</u>'s second step.

3            In sum, when all the circumstances surrounding the prosecutor's challenges to the two

4    prospective jurors are considered, including a comparative juror analysis, the California Court of

5    Appeal reasonably found no prima facie case of discrimination, as well as race-neutral reasons for

6    the challenges.  The state courts' decisions denying Petitioner's equal protection claim were not

7    contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor

8    were they based on an unreasonable determination of the facts in light of the evidence presented.

9    <u>See</u> 28 U.S.C. § 2254(d)(1),(2).

10           **2.    CALJIC No. 8.65**

11           Petitioner claims that the jury instruction on "lying in wait," CALJIC No. 8.65, violated his

12   right to due process.  (<u>See</u> Traverse at 3, 8.)  He argues that the instruction erroneously failed to

13   instruct the jury that it must find an intent to kill or injure the victim.  The California Court of

14   Appeal explained that under California law, first-degree murder accomplished by lying in wait does

15   not require the intent to kill or injure, however.  (<u>See</u> Resp't Ex. 7 at 9 (citing <u>People v. Laws</u>, 12

16   Cal. App.4th 786, 794 (1993), and other cases).)  The state appellate court explained that CALJIC

17   No. 8.65 has been "repeatedly" upheld as setting forth a correct statement of California law.  (Resp't

18   Ex. 7 at 8-9 (citing <u>People v. Ceja</u>, 4 Cal.4th 1134, 1139 (1993).)  A state court's interpretation of

19   state law, including one announced on direct appeal of the challenged conviction, binds a federal

20   court sitting in habeas corpus.  <u>See</u> <u>Bradshaw v. Richey</u>, 546 U.S. 74, 76 (2005); <u>Hicks v. Feiock</u>,

21   485 U.S. 624, 629 (1988) (even a determination of state law made by an intermediate appellate court

22   must be followed).  The California Court of Appeal's explanation and interpretation of state law that

23   first-degree murder under a lying-in-wait theory does not require proof of intent to kill or injure is

24   binding on this Court on federal habeas review.  Thus, Petitioner's claim that the instruction violated

25   his right to due process is premised an interpretation of state law that has been rejected by the state

26   courts, an interpretation that is binding herein.  As the instruction was not erroneous in the manner

27   Petitioner claims, his claim of a due process violation based on such instructional error fails.

28   Accordingly, Petitioner is not entitled to federal habeas relief on this claim.

13

1

### 3.    Second-Degree Murder Instruction

2

Petitioner claims that his constitutional rights to present a defense and to due process were

3

violated because the trial court did not instruct the jury on the defense theory of second-degree

4

murder, as Petitioner had requested.  Due process requires that "'criminal defendants be afforded a

5

meaningful opportunity to present a complete defense.'"  Clark v. Brown, 450 F.3d 898, 904 (9th

6

Cir. 2006) (quoting California v. Trombetta, 467 U.S. 479, 485 (1984)).  Therefore, a criminal

7

defendant is entitled to adequate instructions on the defense theory of the case.  Conde v. Henry, 198

8

F.3d 734, 739 (9th Cir. 2000).

9

Petitioner's claim that the trial court did not instruct the jury on second-degree murder is not

10

borne out by the record.  The trial court instructed the jury on second-degree murder.  (Resp't Ex. 2

11

at 1768-71.)  Moreover, no instruction on second-degree murder requested by defense counsel was

12

refused by the trial court.  (Id. at 1580-99.)  When the prosecutor requested an instruction on second-

13

degree felony murder, defense counsel objected to that instruction and the trial court sustained

14

defense counsel's objection.  (Id. at 1588-93.)  Thus, the record shows that to whatever extent the

15

defense theory rested on second-degree murder, the trial court gave that instruction to the jury, and it

16

only omitted a second-degree *felony* murder instruction that the defense did not want.  As the jury

17

was instructed on the defense theory of second-degree murder, Petitioner's claim that his

18

constitutional rights were violated by the omission of such an instruction fails.

19

Accordingly, the state court opinions rejecting this claim were neither contrary to, nor

20

unreasonable application of, clearly established Supreme Court precedent, nor were they based on an

21

unreasonable determination of the facts in light of the evidence presented.  See 28 U.S.C. §

22

2254(d)(1),(2).

23

### 4.    Ineffective Assistance of Counsel

24

Petitioner claims that he received ineffective assistance of trial counsel in two respects: (1)

25

that counsel failed to present the exculpatory testimony of an "unavailable" witness; and (2) that

26

27

28

14

counsel failed to establish that certain items of evidence did not belong to Petitioner.[3]

## A. **Standard of Review**

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. Id. In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, petitioner must establish two things. First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under professional norms. Id. at 687-88. Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 694. Where the defendant is challenging his conviction, the appropriate question in determining prejudice is "'whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'" Luna v. Cambra, 306 F.3d 954, 961 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 695).

## B. **Witness**

Petitioner claims that counsel was ineffective in failing to present the testimony of a witness named "Eugene," whom Petitioner alleges had "exculpatory" information. In order to succeed on a claim that counsel was ineffective in failing to call a favorable witness, a federal habeas petitioner must identify the witness, provide the testimony that the witness would have given, show that the witness was likely to have been available to testify and would have given the proffered favorable testimony, and establish that such testimony created a reasonable probability that the jury would

---

[3]Petitioner raises the claim regarding items of evidence in his fifth claim. In his traverse, Petitioner also alleges for the first time that counsel failed to communicate a plea offer to him. To begin with, Petitioner may not raise new grounds for relief in a traverse. Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994). In any event, Petitioner alleges that an unspecified member of his family told him about the offer, but he neither presents nor describes any evidence showing that there was such an offer. Moreover, the claim was not exhausted as it was not included in either the petition for review or the habeas petition filed in the California Supreme Court. (See Resp't Exs. 8, 12.)

have reached a verdict more favorable to the petitioner.  See Alcala v. Woodford, 334 F.3d at 862, 872-73 (9th Cir. 2003).  A petitioner's mere speculation that the witness would have given helpful information if interviewed by counsel and called to the stand is not enough to establish ineffective assistance.  See Bragg v. Galaza, 242 F.3d 1082, 1087 (9th Cir.), amended, 253 F.3d 1150 (9th Cir. 2001).

Petitioner alleges in his traverse that the witness that trial counsel should have interviewed and called was named "Eugene," and he could have testified that another witness, Patricia Toscano, asked him to help her clean up the residence where the victim was shot prior to the arrival of the police.  According to Petitioner, this testimony would have established that there "may" have been exculpatory evidence that was destroyed at the crime scene.  In Dows v. Wood, 211 F.3d 480 (9th Cir. 2000), the Ninth Circuit denied the petitioner's claim that counsel had been ineffective in failing to investigate and call a witness because the petitioner provided no evidence, beyond his own "self-serving affidavit," that the witness would have provided helpful testimony, such as "an affidavit from the alleged witness."  211 F.3d at 486-87; cf. Alcala, 334 F.3d at 872 & n. 3 (distinguishing, inter alia, Dows; finding ineffective assistance of counsel where petitioner submitted interviews reflecting testimony missing witnesses would have provided).  Similar to Dows, Petitioner here does not provide an affidavit from Eugene, or any evidence other than Petitioner's own statements in his traverse, showing the testimony that Eugene would have provided.  Nor does Petitioner provide any evidence, beyond his own conclusory statements, demonstrating that Eugene was available to testify at the juvenile fitness hearing; to the contrary, Petitioner describes Eugene as "unavailable."  Finally, Petitioner alleges only that Eugene's testimony "may" have shown that there was exculpatory evidence at the crime scene that was destroyed.  Speculation about the possibility of unidentified exculpatory evidence falls far short from establishing a reasonable probability that Eugene's testimony would have made a difference in the outcome of the trial.  For these reasons, Petitioner has failed to show counsel was ineffective in failing to call a witness at trial.

**B.    Items of Evidence**

Petitioner claims that trial counsel was ineffective in failing to raise establish that certain items of evidence did not belong to Petitioner.  Petitioner can make out a claim of ineffective

16

assistance of counsel only by pointing to specific errors made by trial counsel.  <u>United States v.
Cronic</u>, 466 U.S. 648, 666 (1984).  Petitioner must identify actual errors or omissions by counsel
that a conscientious advocate would not have made, and show that they suffered prejudice from
those errors.  <u>United States v. Ross</u>, 338 F.3d 1054, 1056-57 (9th Cir. 2003).  Furthermore,
conclusory claims unsupported by specific facts are not entitled to habeas relief.  <u>Jones v. Gomez</u>, 66
F.3d 199, 204-205 (9th Cir. 1995).  Petitioner does not specify what these items of evidence were,
how counsel might have established that they did not belong to Petitioner, or what bearing counsel's
doing so would have had on the issues or outcome of the trial.  Consequently, Petitioner's claim that
counsel failed to establish that unspecified items did not belong to Petitioner does not to establish
that his Sixth Amendment right to the effective assistance of counsel was violated.

### D.    Conclusion

For the reasons discussed, Petitioner did not receive ineffective assistance of counsel either
from counsel's failure to call a certain witness at trial or in failing to establish that items of evidence
did not belong to Petitioner.  Accordingly, the state court opinions rejecting this claim were neither
contrary to, nor an unreasonable application of, clearly established Supreme Court precedent, nor
were they based on an unreasonable determination of the facts in light of the evidence presented.
<u>See</u> 28 U.S.C. § 2254(d)(1),(2).

### 5.    Appellate Counsel

Petitioner claims that his appellate counsel rendered ineffective assistance in failing to raise
the foregoing claims of ineffective assistance of trial counsel on direct appeal.  The Due Process
Clause guarantees a criminal defendant the effective assistance of counsel on his first appeal as of
right.  <u>Evitts v. Lucey</u>, 469 U.S. 387, 391-405 (1985).  Claims of ineffective assistance of appeal are
reviewed according to the standard set out in <u>Strickland</u>.  <u>Miller v. Keeney</u>, 882 F.2d 1428, 1433
(9th Cir. 1989).  A petitioner therefore must show that counsel's advice fell below an objective
standard of reasonableness and that there is a reasonable probability that, but for counsel's
unprofessional errors, he would have prevailed on appeal.  <u>Id.</u> at 1434 n.9 (citing <u>Strickland</u>, 466
U.S. at 688, 694).  It is important to note that appellate counsel does not have a constitutional duty to
raise every nonfrivolous issue requested by defendant.  <u>Jones v. Barnes</u>, 463 U.S. 745, 751-754

1  (1983).  The weeding out of weaker issues is widely recognized as one of the hallmarks of effective

2  appellate advocacy.  Miller, 882 F.2d at 1434.  Appellate counsel therefore will frequently remain

3  above an objective standard of competence and have caused client no prejudice for the same reason

4  – because he declined to raise a weak issue.  Id.

5          As discussed above, the claims of ineffective assistance of trial counsel do not have merit.

6  Consequently, it was neither unreasonable nor prejudicial for appellate counsel not to have raised

7  them on appeal.  The state court opinions rejecting this claim were neither contrary to, nor an

8  unreasonable application of, clearly established Supreme Court precedent, nor were they based on an

9  unreasonable determination of the facts in light of the evidence presented.  See 28 U.S.C. §

10  2254(d)(1),(2).

11                                          **CONCLUSION**

12          For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.  The Clerk of

13  the Court shall enter judgment and close the file.

14          No certificate of appealability is warranted in this case.  See Rule 11(a) of the Rules

15  Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (requiring district court to rule on certificate of

16  appealability in same order that denies petition).  Petitioner has failed to make a substantial showing

17  that any of his claims amounted to a denial of his constitutional rights or demonstrate that a

18  reasonable jurist would find this Court's denial of his claims debatable or wrong.  See Slack v.

19  McDaniel, 529 U.S. 473, 484 (2000).

20          IT IS SO ORDERED.

21

22  DATED: 9/15/10

23                                          SAUNDRA BROWN ARMSTRONG
                                            United States District Judge
24

25

26

27

28

1  UNITED STATES DISTRICT COURT
   FOR THE
2  NORTHERN DISTRICT OF CALIFORNIA

3

4  MICHAEL J WRIGHT,                           Case Number: CV08-02228 SBA

5              Plaintiff,                       **CERTIFICATE OF SERVICE**

6     v.

7  A HEDGPETH et al,

8              Defendant.
   _____/

9

10 I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District
   Court, Northern District of California.

11
   That on September 15, 2010, I SERVED a true and correct copy(ies) of the attached, by placing said
12 copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said
   envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle
13 located in the Clerk's office.

14

15

16 Michael J. Wright V-91600
   Pleasant Valley State Prison
17 24863 W. Jayne Ave.
   P.O. Box 8503
18 Coalinga, CA 93210-8503

19 Dated: September 15, 2010

20                                              Richard W. Wieking, Clerk
                                                By: LISA R CLARK, Deputy Clerk
21

22

23

24

25

26

27

28